**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEMARIO G. WARREN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1709** |
| **DARREL VANNOY, WARDEN** | **SECTION "T"(5)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

**Procedural History**

Petitioner, Demario G. Warren, is a convicted inmate housed at the Louisiana State Penitentiary in Angola, Louisiana. In September 2016, he was charged by grand jury indictment with one count of second-degree murder and two counts of aggravated assault with a firearm.[1] After a jury trial held in April 2019, he was found guilty of the lesser-

---

[1] ECF No. 5-1 at 2, Grand Jury Indictment, Criminal District Court for the Parish of Washington (Count 1 – La. R.S. 14:30.1 Second-Degree Murder of K. Williams; Count 2 – La. R.S. 14:37.4 Aggravated Assault upon J. Burkhalter, with a firearm; and Count 3 – La. R.S.

included offense of manslaughter and guilty as charged on the two counts of aggravated assault with a firearm.[2] In May 2019, the State filed a multiple-offender bill of information alleging that Warren was a habitual offender as to Count 1 only.[3] On June 19, 2019, he admitted his status as a fourth-felony offender and the trial court sentenced him on Count 1 to life imprisonment without the benefit of probation, parole, or suspension of sentence and 10 years' imprisonment for each count of aggravated assault with a firearm (Counts 2 and 3), all to run concurrently.[4] His motion for appeal was granted.[5] He also filed a *pro se* motion for reconsideration of sentence and motion to correct an illegal sentence. Both motions were denied.[6]

---

14:37.4 Aggravated Assault on a juvenile, S.B., with a firearm). He was arrested on one count of first-degree murder and two counts of aggravated assault with a firearm. ECF No. 5-1 at 53. The Capital Defense Project withdrew from representation when it was determined that the case would not be tried as a capital case. ECF No. 5-1 at 60.

[2] Russell Stegeman represented Warren and withdrew upon appeal (ECF No. 5-3 at 118). Judge William H. Burris presided over trial. ECF No. 5-1 at 20-23, Trial Minute Entries, April 1-3, 2019. *See also* ECF No. 5-1 at 436-38, Jury Verdict Forms. See Trial Transcript, ECF No. 5-2 at 2-88, April 1, 2019 (Day 1); ECF No. 5-2 at 89-171, April 2, 2019 (Day 2); ECF No. 5-1 at 172-215, April 3, 2019 (Day 3).

[3] ECF No. 5-1 at 439, Multiple Offender Bill of Information.

[4] ECF No. 5-1 at 24-25, Sentencing Minute Entry, June 19, 2019; *see also* ECF No. 5-1 at 440, Sentencing Commitment Order; ECF No. 5-2 at 216, Sentencing Transcript.

[5] ECF No. 5-1 at 445.

[6] ECF No. 5-1 at 455-57, Motion to Correct Illegal Sentence filed July 16, 2019, and denied by Order signed July 23, 2019; ECF No. 5-1 at 459-61, Motion for Reconsideration filed July 12, 2019, and denied by Order signed July 23, 2019.

## Original Direct Appeal Proceedings

On direct appeal, Warren asserted two claims for relief: (1) the verdicts "are presumptively nonunanimous and, as such, should not be permitted to stand[;]" and (2) the trial court erred by adjudicating him a habitual offender without either a hearing or a formal and valid waiver of his right to a hearing. On July 24, 2020, the Louisiana First Circuit Court of Appeal determined that the 10-to-2 verdict on Count 1 (manslaughter) was not unanimous and vacated the conviction, habitual-offender adjudication, and sentence on that count under *Ramos v. Louisiana*;[7] affirmed the convictions and sentences on Counts 2 and 3 (aggravated assault with a firearm), which were unanimous and constitutional under *Ramos* and otherwise uncontested; and remanded to the district court with respect to Count 1.[8] Warren did not appeal to the Louisiana Supreme Court.

## State Trial-Court Proceedings Upon Remand

On August 5, 2020, the State filed new multiple-offender bills of information alleging that Warren was a habitual offender as to Count 2 and Count 3.[9] On November 9, 2020, a

[7] *Ramos v. Louisiana*, 590 U.S. 83 (2020) (holding that the Sixth Amendment right to jury trial, as incorporated against the States by way of the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense). The ruling applied to those defendants, like Warren, convicted of felonies by nonunanimous jury verdicts whose cases were still pending on direct appeal.

[8] *State v. Warren*, 2019-KA-1410, 2020 WL 4250839 (La. App. 1 Cir. 7/24/20); *see also* ECF No. 5-2 at 278.

[9] ECF No. 5-2 at 285-86, Multiple Offender Bill of Information as to Counts 2 and 3. There is no file date stamp. The date was obtained from the State's response, ECF No. 6 at p. 4.

hearing took place concerning the new habitual-offender bills filed by the State.[10] Warren pleaded not true and the matter was set for a hearing on the multiple-offender bills.[11] In January 2022, Warren also filed a *pro se* motion to quash the multiple-offender bill of information.[12] On January 21, 2022, the trial court held a habitual-offender hearing and denied the motion to quash.[13] Warren was adjudicated as a fourth-felony offender and his original 10-year sentences were vacated.[14] He was sentenced as a habitual offender on each count to life imprisonment without benefit of probation, parole or suspension of sentence.[15] The trial court noted that it was up to the State how to proceed moving forward and whether to retry him on Count 1.[16] Warren timely filed both a counseled and *pro se* motion to reconsider the sentence. On April 22, 2022, the trial court held a hearing and

---

[10] ECF No. 5-2 at 340, Transcript of Hearing, November 9, 2020. Warren was represented by David Knight.

[11] *Id*. at 347.

[12] ECF No. 5-2 at 297, Motion to Quash.

[13] ECF No. 5-2 at 349-89, Multiple Offender Hearing Transcript, January 21, 2022 at p. 374-75.

[14] *Id*. at 385-87; *see also* ECF No. 5-1 at 28-29, Resentencing Minute Entry, January 21, 2022.

[15] ECF No. 5-8 at 461, Sentencing Commitment Order; ECF No. 5-8 at 56, Minute Entry, January 21, 2022. There is no mention as to whether the life sentences were to run concurrently, but that presumption applies in this case. *See* La. C.Cr.P. art. 883.

[16] There is no indication in the record as to when or how the decision to pursue prosecution on Count 1 transpired, but the State did subsequently take up that prosecution. *See* ECF No. 5-8 at 45.

denied his motions to reconsider the sentence.[17] Warren appealed from the habitual-offender adjudication and sentences.[18]

### Direct Appeal after Remand/Resentencing

On appeal, Warren asserted two assignments of error: (1) the State engaged in prosecutorial vindictiveness in belatedly filing habitual-offender bills of information following his successful appeal; and (2) the trial court erred in increasing his sentences without cause.[19] On June 15, 2023, the Louisiana First Circuit affirmed his habitual-offender adjudications and sentences.[20] He filed a *pro se* application for writ of certiorari to the Louisiana Supreme Court.[21] On September 4, 2024, the Louisiana Supreme Court denied relief.[22] On March 24, 2025, the United States Supreme Court denied his petition

---

[17] ECF No. 5-2 at 333, Motion to Reconsider Sentence filed by counsel David Knight, January 28, 2022; ECF No. 5-2 at 335, *Pro Se* Motion to Reconsider Sentence (on grounds it was unconstitutionally excessive and the result of vindictive prosecution); ECF No. 5-2 at 400, Transcript of Proceedings on Motions to Reconsider Sentence, April 22, 2022.

[18] ECF No. 5-2 at 338.

[19] ECF No. 5-8 at 40, Louisiana First Circuit No. 22-KA-1314 at pg. 49 (Assignment of Errors 1 and 2), Appellant Brief; ECF No. 5-8 at 58, Appellee Brief.

[20] *State v. Warren*, 2022-KA-1314, 2023 WL 4008395 (La. App. 1 Cir. 6/15/23); ECF No. 5-2 at 423.

[21] ECF No. 5-2 at 406, La. S.Ct. Writ Application by Warren signed July 5, 2023.

[22] *State v. Warren*, 2023-KO-01049 (La. 2024), 391 So.3d 1059; ECF No. 5-8 at 1.

for writ of certiorari.[23]

**Guilty Plea after Remand - Manslaughter**

On January 29, 2025, Warren withdrew his plea of not guilty and entered a plea of guilty to manslaughter. The trial court sentenced him to nine years' imprisonment at hard labor, to run concurrently with any time he was serving.[24]

**Federal Habeas Petition**

On August 18, 2025, Warren submitted his federal petition for habeas corpus relief.[25] He asserts that the prosecutor vindictively filed two new multiple-offender bills of information for convictions/sentences the court of appeal had affirmed, and the trial court erred in adjudicating him a fourth-felony habitual offender on remand and vacating the original 10-year sentences and imposing enhanced life sentences without benefit of probation, parole, or suspension of sentence. The State concedes that the petition is timely and that the claims were fully exhausted in the state courts. The State contends that the

[23] *Warren v. Louisiana*, 145 S.Ct. 1442, 221 L.Ed.2d 562 (2025).

[24] ECF No. 5-2 at 493, Transcript of Hearing, January 29, 2025 (defense counsel noted that although not formerly amended, the charge in the bill of indictment was considered amended to manslaughter as per the Louisiana Supreme Court instruction that the State may not recharge him with second-degree murder – pp. 502-03); ECF No. 5-1 at 468, Minute Entry, January 29, 2025.

[25] ECF No. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus and Memorandum in Support.

claims of prosecutorial and judicial vindictiveness lack merit.[26] Although given the opportunity, Warren did not file a reply to the State's response.

**Facts**

The victim, Kiniaki Williams, died from two gunshot wounds, one piercing his back and one piercing the back of his head. At the time of the shooting, Williams lived with his girlfriend and her 17-year-old son. His girlfriend testified at trial that Williams heard a car pull up to the house in the early morning hours, looked out the bedroom window, and said it was the defendant, "Mario," who was a friend of his. Williams went outside on the porch to talk to "Mario." She could hear them talking in normal voices, not loud or angry, and then Williams came back inside to get his phone. She then heard two gunshots. As she was walking out of her bedroom, she saw Williams lying on the floor and saw Mario coming into her room. She had known the defendant for a long time. He put a gun to her head and said, "Give me this nigger f-ing money." Her son came out and turned on the kitchen light. He told him to "cut the f-ing light off." He then put the gun to her son's head. Defendant stood over Williams and patted his pockets to see if he had any money. She said, "Mario, please don't kill us." He changed his voice and said, "This ain't no f-ing Mario." He pointed the gun at her again and said there was someone outside ready to kill them if they called the police. When he left, they ran to a neighbor's house and called the police. She testified at trial that she knew and recognized Mario as the killer because he did not wear a

---

[26] ECF No. 6, State's Response at p. 5.

mask and she looked him dead in the eye when he had the gun on her.

Her son also testified at trial. He heard one gunshot in the early morning hours. There was a pause between the first and second shot. He got out of bed and saw defendant going to his mom's room. He immediately recognized Mario. He saw Williams lying on the ground and went into the kitchen to turn on the light. Defendant came out holding a gun to his mom's head. Defendant then put the gun to his head and told him to cut the light off. He was scared they would be shot. He started patting Williams down looking for money. He demanded, "where the f-ing money at" and when they told him Williams didn't have any, he left. He wanted to stay and help Williams, but he went with his mom to the neighbor's.

Defendant's former girlfriend testified at trial. They were living together at the time of the incident. Defendant came home in the early morning hours that day and said he messed up and he needed her to take him somewhere. They drove around and were eventually stopped by the police. She testified that defendant told her that he had killed Williams. The next day, she told Williams' girlfriend what he said. She said she subsequently received a threatening phone call telling her to leave her house because some of Williams' family members were coming to shoot up her house. She could not say that either Williams' girlfriend or her son were involved in that. She filed a police report. Nothing ever materialized from the threats.

Although no one saw the shooting, the physical evidence generally corroborated the

events described. The chief deputy coroner who performed the autopsy testified that the victim was shot twice and died from the lethal shot to the back of the head. The range of fire was at least 36 to 43 inches and classified by the coroner as a "distant gunshot wound." Officers at the scene found a large amount of blood in the hallway, and a .22 caliber spent shell on the floor approximately three to four feet inside the front door of the house. In the kitchen, officers found another spent .22 caliber shell. The defendant's car was located and searched. No gun was ever recovered. Approximately $200 in cash and a cell phone were found in the vehicle. No gunshot residue tests were performed.

**Standards of Review on the Merits**

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of

law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 562 U.S. 921 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an

incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.”). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable” under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id*. (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) (“AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.”).

**Analysis of Claims for Relief**

*A. Prosecutorial Vindictiveness*

Warren asserts that the prosecutor vindictively filed belated multiple-offender bills on the two convictions for aggravated assault with a firearm after he obtained a successful outcome on appeal on the manslaughter conviction. He contends that the State sought to punish him for exercising his constitutional right to appeal and getting his unconstitutional manslaughter conviction and associated multiple-offender adjudication and enhanced life sentence vacated under *Ramos*.

The claim of prosecutorial vindictiveness was raised on direct appeal and rejected for the following stated reasons:

> A vindictive prosecution is one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right and

thereby violates a defendant's Fifth Amendment right to due process. *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *State v. Wesley*, 49,438 (La. App. 2d Cir. 2/26/15), 161 So.3d 1039, 1043, *writ not considered*, 2015-1096 (La. 3/14/16), 188 So.3d 1065. A defendant has the burden of proving the affirmative defense of prosecutorial vindictiveness by a preponderance of the evidence. *Wesley*, 161 So.3d at 1043.

The discretion to charge a defendant under the habitual offender law lies with the district attorney. *State v. Carter*, 610 So.2d 972, 975 (La. App. 1st Cir. 1992); *see* La. R.S. 15:529.1. A defendant may be charged as a habitual offender at any time, even after conviction and sentence. La. R.S. 15:529.1(D)(1)(a). A district attorney has great discretionary power to file a habitual offender bill under La. R.S. 15:529.1(D), just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. *State v. Dorthey*, 623 So.2d 1276, 1279 (La. 1993). His use of the habitual offender laws simply provides an ancillary sentencing factor designed to serve important and legitimate societal purposes. Furthermore, the mere use of the habitual offender law will not create a presumption of prosecutorial vindictiveness. The events in the course of prosecution will create a presumption of vindictiveness only when, to a reasonable mind, the filing of the habitual offender bill can be explained only by a desire to deter or punish the defendant's exercise of legal rights. *State v. Orange*, 2002-0711 (La. App. 1st Cir. 4/11/03), 845 So.2d 570, 578, *writs denied*, 2003-1352 (La. 5/21/04), 874 So.2d 161 & 2003-2195 (La. 7/2/04), 877 So.2d 137.

We find no prosecutorial vindictiveness in the instant matter. The circumstances do not demonstrate the defendant was punished for the exercise of any legal right. His conviction and sentence for manslaughter were vacated pursuant to *Ramos*, and the matter was remanded to the trial court. The State chose to retry the defendant on that charge. Regardless, on the previous manslaughter conviction, the State filed a habitual offender bill of information in order to enhance the sentence for that conviction to life imprisonment. Prior to the manslaughter conviction and enhanced sentence being vacated, the State did not choose to enhance the defendant's sentences for aggravated assault with a firearm. The State had no reason to do so since it had obtained a life sentence with the enhancement of the manslaughter sentence.

Once this court vacated the life sentence on the manslaughter conviction because of a *Ramos* issue, the State sought to enhance the defendant's

> sentences for aggravated assault with a firearm to ensure the defendant would be sentenced to life as a fourth-felony habitual offender, as it had always intended. This action reflected prosecutorial discretion rather than vindictiveness. *See Carter*, 610 So.2d at 975. Moreover, even if we were to conclude the prosecution's subsequent filing of new habitual offender bills of information created a presumption of vindictiveness, the State had legitimate objective reasons for proceeding with the habitual offender charges. Specifically, the defendant did, in fact, commit the prior felonies for which he was convicted and which served as the basis for the habitual offender proceedings. *See Wesley*, 161 So.3d at 1045.[27]

The Louisiana Supreme Court affirmed without additional stated reasons.[28] The United States Supreme Court denied his petition for writ of certiorari.[29] For the following reasons, the state court's rejection of the claim was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States.

Vindictive prosecution arises when a prosecutor acts solely to punish a defendant for exercising a protected statutory or constitutional right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998); *United States v. Ward*, 757 F.2d 616, 619–20 (5th Cir. 1985). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " *Goodwin*, 457 U.S. at 372 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). The due process clause is offended by the possibility of increased punishment after a successful appeal where

---

[27] *Warren*, 2023 WL 4008395 at *1-2.

[28] *State v. Warren*, 2023-01049 (La. 2024), 391 So.3d 1059.

[29] *Warren v. Louisiana*, 145 S.Ct. 1442 (2025).

it poses "a realistic likelihood of vindictiveness" on the part of the prosecutor. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (holding that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo); *see also United States v. Krezdorn*, 718 F.2d 1360, 1362–65 (5th Cir. 1983) (en banc)).

A claim of prosecutorial vindictiveness requires that a defendant prove: (1) actual vindictiveness through objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights, or (2) sufficient facts to create a presumption of vindictiveness. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008) (citing *Goodwin*, 457 U.S. at 374, 384). Where there is no direct evidence of actual vindictiveness, as in this case, a petitioner may be entitled to relief only if a presumption of vindictiveness is warranted. *See Goodwin*, 457 U.S. at 380–81. In *Goodwin*, the Supreme Court explained that a reasonable likelihood of vindictiveness must exist to apply the presumption:

> [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*Goodwin*, 457 U.S. at 373. The Supreme Court found that no presumption of prosecutorial vindictiveness was warranted in *Goodwin* based on a pretrial decision to modify and increase

the severity of the charges against the defendant after he decided not to plead guilty and requested a jury trial on misdemeanor charges.

The United States Fifth Circuit Court of Appeals set forth a succinct analysis for determining if a presumption exists:

> In determining whether there is to be a presumption of unconstitutional prosecutorial vindictiveness, the appropriate inquiry is whether the situation is one in which there exists a substantial and realistic likelihood of such motive, as, for example, where, after the defendant's prior exercise of a procedural or substantive legal right, or his having succeeded in reversing a conviction on appeal, the prosecution acts arguably to punish the exercise of such rights, by increasing the measure of jeopardy by bringing additional or more severe charges, or where the judge assesses a larger penalty upon subsequent conviction for the same offense following an earlier reversal. *See, e.g., Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Such actions, occurring in situations where the risk of vindictiveness is rife, thus give rise to a rebuttable presumption of vindictiveness. Absent such circumstances, no presumption arises. *Cf. United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 2491, 73 L.Ed.2d 74 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

*Ward*, 757 F.2d at 619-20. "There is no presumption of vindictiveness if in the context of the entire proceedings 'any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision ... was motivated by some purpose other than a vindictive desire to deter or punish appeals.' " *Saltzman*, 537 F.3d at 360 (citing *United States v. Wells*, 262 F.3d 455, 466–67 (5th Cir. 2001) (quoting *Krezdorn*, 718 F.2d at 1365)).

Initially, to the extent that the state appellate courts found that the prosecutor exercised proper discretion under applicable state law in filing the habitual-offender bills of

information on the charges of aggravated assault with a firearm upon remand, after the manslaughter conviction, habitual-offender adjudication and enhanced sentence was vacated by the court of appeal, this federal habeas court is bound by that determination.[30] As the Supreme Court has stated, "We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). The Court thus considers only the state-court determination as to whether the post-appeal multiple offender bills, multiple-offender adjudication and enhanced sentences give rise to a presumption of vindictiveness in violation of the constitutional right to due process.

In this case, the State acknowledges that the impetus for filing the new multiple-offender bills was the defendant's exercise of his appellate rights and success in having the non-unanimous manslaughter conviction and attendant multiple-offender adjudication and sentence vacated under *Ramos*.[31] However, as the State argues, and the Louisiana First

---

30 ECF No. 1-1 at 8-9. In his memorandum in support, Warren cites to Louisiana Code of Criminal Procedure article 874 and Louisiana Revised Statute 15:529.1(D)(1)(a). A federal habeas court will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).

31 ECF No. 6 at 8. The State asserts, "It is true that the defendant's exercise of his appellate rights were the 'but for' cause of the district attorney's decision to file a habitual offender bill of information as to Count 2 and Count 3… [but] [i]t does not follow that the district attorney was motivated by a desire to retaliate against the defendant for exercising his right to appeal." *Id*.

Circuit reasonably determined, the prosecutor's decision to enhance the sentences on the two remaining convictions stemmed purely from prosecutorial discretion to bill and adjudicate him as a fourth-felony offender, as the prosecutor had always intended and initially chose to do on the now vacated manslaughter conviction, and not from vindictiveness. *See Goodwin*, 457 U.S. at 380 & n. 11. The decision to exercise prosecutorial sentencing discretion to multiple bill him again on the remaining convictions occurred because of the intervening change in the law and vacatur of the original multiple-offender adjudication and sentencing on a different count, and it allowed the trial court to adjudicate him anew as a multiple offender and impose the same enhanced sentence for the remaining convictions on remand. The fact that he would be subjected to a harsher sentence because he was a multiple offender pre-existed the successful appeal. It was not threatened vindictively because he appealed.

Warren points to no United States Supreme Court case, and the Court finds none, that directly holds that a presumption of prosecutorial vindictiveness should apply in this situation. Even if, assuming *arguendo*, the two new multiple-offender bills of information could have resulted in more severe sentencing exposure,[32] such that a rebuttable presumption of vindictiveness may arise when prosecutors increase the number or severity

[32] Warren contends that he originally had only one life sentence, but the new multiple-offender bills subjected him to two life sentences and the possibility of a third life sentence on the unprosecuted manslaughter charge. However, he concedes that the concurrent life sentences resulted in no practical increase in the time served. ECF No. 1-1 at p. 8.

of charges, "if any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created." *Krezdorn*, 718 F.2d at 1365. Here, the prosecutor revised the multiple bills of information and charged him as a fourth-felony habitual offender on the remaining convictions for a clear, objective reason other than to punish him for exercising his legal right to appeal. Warren admitted his status as a fourth-felony offender for purposes of the first multiple-offender adjudication. And he remained a fourth-felony offender for purposes of enhancing his sentences on the convictions that were upheld even though the prior multiple-offender adjudication was vacated because of the non-unanimous jury verdict on the manslaughter conviction. In the last reasoned state-court decision, the Louisiana First Circuit reasonably determined that there was no prosecutorial vindictiveness in this case. A petitioner is entitled to relief only when he demonstrates that a state-court decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, which is plainly not the case here. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

### *B. Judicial Vindictiveness*

In a related claim, Warren alleges that the trial court should be presumed to have enhanced his sentence vindictively because it "increased, without cause, his sentence

following his successful appeal of Count One."[33] This claim was raised on direct appeal and rejected for the following stated reasons:

> The defendant also argues on appeal that the same trial court that imposed the original enhanced life sentence also imposed the instant enhanced life sentences and, thus, the presumption of vindictiveness should apply. In support of this proposition, the defendant cites to several cases, including *State v. Dauzart*, 2007-15 (La. App. 5th Cir. 5/15/07), 960 So.2d 1079 and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part by*, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).
>
> Generally, if a convicted defendant is successful in having his conviction overturned on appeal and is subsequently re-tried and convicted, the trial court may not then impose a more severe sentence. A defendant may not be punished for seeking appellate redress. If a trial court imposes a more severe sentence on a defendant when he is convicted following a successful appeal, the trial court's reasons for the increased sentence must affirmatively appear in the record. Otherwise, there is a presumption of vindictiveness. The purpose behind this rule is to prevent defendants from being penalized for having exercised their constitutional rights. However, the presumption of vindictiveness is inapplicable where different judges have imposed the different sentences against the defendant, because a sentence "increase" cannot truly be said to have taken place. *Dauzart*, 960 So.2d at 1086.
>
> The defendant's reliance on *Dauzart* and *Pearce* is misplaced. The same trial court presided over the defendant's original trial and sentencing and the instant proceedings. Notwithstanding, the cases cited by the defendant indicate that a presumption of vindictiveness is triggered when the same trial court imposes a more severe sentence on a defendant after a new trial. Neither of these factors is present in the instant matter. There has been no imposition of a more severe sentence on the defendant and there has been no new sentence imposed on him after a new trial. Upon remand, the trial court again adjudicated the defendant a fourth-felony habitual offender and sentenced him to a life sentence for each aggravated assault with a firearm conviction. The new enhanced sentences for these convictions were not more severe than the enhanced life sentence imposed for the defendant's manslaughter

[33] ECF No. 1-1 at p. 4.

> conviction. Further, the new enhanced sentences were not imposed after a new trial, since the defendant's new trial on count one had not been held at the time of the new habitual offender hearing and sentencing. Moreover, the trial court had no discretion in imposing mandatory enhanced life sentences under the Habitual Offender Law.[34]
>
> The defendant has failed to produce any evidence of vindictiveness on the part of either the prosecution or the trial court. While the defendant's arguments seem to focus more on prosecutorial vindictiveness, he has provided no factual basis for such a claim. Moreover, the defendant's claims as to the trial court's vindictiveness in imposing a harsher sentence on remand is not supported by the record. *See Orange*, 845 So.2d at 579-80.[35]

The Louisiana Supreme Court affirmed without additional stated reasons.

In *North Carolina v. Pearce*, the United States Supreme Court imposed a general presumption of judicial vindictiveness when a judge imposes a more severe sentence on a defendant after a successful appeal and new trial. *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The Court reasoned, "Due process of law… requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id*. at 725. The Court further explained, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the

---

[34] The trial court specifically found there were no reasons to deviate from the mandatory life sentences pursuant to *Dorthey*. (R. 441-42).

[35] *Warren*, 2023 WL 4008395 at *2-3 (footnote in original).

part of the sentencing judge." *Id*. The Court stated that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id*. at 726. The Court explained:

> Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id*. Since *Pearce*, the United States Supreme Court has narrowed the scope of the presumption to apply only "where there is a reasonable likelihood that the increase in sentence was the product of *actual* vindictiveness on the part of the sentencing authority." *Plumley v. Austin*, 135 S.Ct. 828, 190 L.Ed.2d 923 (2015) (Thomas, J. dissenting) (citing *Alabama v. Smith*, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (presumption inapplicable where the first sentence was based on a guilty plea and the second sentence follows a trial).

Warren alleges that "the same judge that originally imposed the sentence of life imprisonment, has imposed a second, and has left open the possibility of a third, life sentence based on the same conduct, with the only distinguishing feature being the successful exercise of Petitioner's right to appeal."[36] Thus, he argues, the presumption of vindictiveness applies, and the record provides no support for the increase in sentencing.

---

[36] ECF No. 1-1 at p. 7.

The Louisiana First Circuit found the *Pearce* presumption inapplicable in this case because "[t]here has been no imposition of a more severe sentence on the defendant" following his partially successful appeal.[37] Under these circumstances, no concern arises that an increase in the sentence was motivated by vindictiveness on the part of the sentencing judge. Warren originally received a life sentence without benefit and two 10-year sentences to run concurrently. Upon remand, he received a life sentence without benefit on each count of aggravated assault with a firearm and a nine-year sentence after pleading guilty to manslaughter, all to run concurrently.[38] The length of his overall sentence was not increased. He received the same enhanced sentence as a fourth-felony offender that was originally imposed. Furthermore, as the court of appeal recognized, the trial court had no sentencing discretion when imposing the mandatory enhanced life

---

[37] *Warren*, 2023 WL 4008395 at *3. The court of appeal also stated that there has been no new sentence imposed on him after a new trial. The court held a new multiple-offender adjudication hearing based on the two original counts for which he had been found guilty by a jury and convicted unanimously. The facts distinguish Warren's case from those in *Pearce*.

[38] *See United States v. Jones*, 831 F. App'x 100, 101 (5th Cir. 2020) (rejecting *Pearce* presumption on a Section 2255 motion to vacate a federal sentence because only if a defendant's aggregate sentence on multiple related counts at resentencing is more severe than his original aggregate sentence, is the new sentence presumptively vindictive) (citing *United States v. Campbell*, 106 F.3d 64, 68-69 (5th Cir. 1997). The Court has found no controlling federal authority applying the aggregate approach to a claim brought under 28 U.S.C. § 2254. Thus, the state court's using such an approach cannot be contrary to, or an unreasonable application of, Supreme Court authority. Nor would the conclusion that the sentence is not lengthier than his original sentence be an unreasonable determination of the facts.

sentences under the Habitual Offender Law. Because he has not shown that the state-court determination was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, he is not entitled to relief on this claim.

**RECOMMENDATION**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that Warren's application for federal habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[39]

New Orleans, Louisiana, this 12th day of November, 2026.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

[39] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.